IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD BRITTON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-cv-1593 |
| | : | |
| WHITTMANHART, INC., and | : | |
| JOHN WEINSTEIN, a/k/a | : | |
| "CHIP" WEINSTEIN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                              **August 13, 2009**

Before this Court are Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 4) and Plaintiff's Response in Opposition thereto (Doc. No. 8). For the reasons set forth in the following memorandum, the Defendant's Motion to Dismiss is denied.

**Background**

Plaintiff Britton filed his Complaint against Defendant WHITTMANHART and Defendant Weinstein on February 24, 2009, in the Philadelphia Court of Common Pleas.  The case was removed to this Court pursuant to 28 U.S.C. § 1441 and Defendant Weinstein was subsequently dismissed from the action. WHITTMANHART, an advertising agency that creates "user-friendly digital

1

solutions," is a Delaware corporation with its principle place of Business in Illinois. (Notice of Removal, Exh. B.) Britton is a citizen of Philadelphia and worked as WHITTMANHART's Business Development Manager within its Interactive Business Unit in Philadelphia from March 13, 2006, until his termination on April 11, 2008.

The Plaintiff and Defendant dispute two documents pertaining to the terms of Mr. Britton's employment and compensation. The first document ["Incentive Plan"], entered into March 1, 2006, includes the terms of Mr. Britton's employment, including, *inter alia*, his commission structure, various terms and conditions, and termination policy. The Incentive Plan also describes eligibility for Business Development Managers to participate in the bonus program. The first provision in the Incentive Plan notes that the Incentive Plan "is a statement of the Company's intentions and does not constitute a guarantee and does not create a contractual relationship or any contractually enforceable rights between the Company and the Employee." (Notice of Removal, Exh. A.) Additionally, the Incentive Plan states that "eligibility in the Plan is subject to the Company's sole discretion . . . [and] otherwise eligible Employees may be deemed ineligible for participation in the Plan at the Company's sole discretion upon written notice." (Notice of Removal, Exh. A.)

2

The Incentive Plan further outlines terms for Incentive Plan payments if the employee is terminated, stating that "the employee will be eligible for incentive bonuses calculated based on business conducted through the previous full calendar month of employment." (Notice of Removal, Exh. A.)

The second written document at issue [the "Commission Agreement"], signed November 19, 2007, details a new "salary and commission structure" which reduces the Plaintiff's commission from three to one and one-half percent. (Notice of Removal, Exh. B.) The Commission Agreement asks that Plaintiff "indicate . . . acceptance of the terms set forth in this letter by signing the enclosed copy . . . ."

Pursuant to the terms in these agreements, Britton asserts two claims.  First, Britton alleges a breach of contract action against WHITTMANHART. Specifically, he alleges that pursuant to the Incentive Plan and the Commission Agreement, WHITTMANHART breached its obligation to pay Britton commissions on revenues received for a period of one year following WHITTMANHART's first collection from clients that were acquired by Britton or clients for whom Britton or his team were the procuring cause.  He further alleges that WHITTMANHART breached a duty of good faith and fair dealing by terminating his employment without cause in order to avoid paying him earned commissions, which he believes

3

exceed $150,000.

The second count against WHITTMANHART, brought pursuant to the Pennsylvania Wage and Payment Collection Law, 43 Pa.C.S. § 260.1, *et. seq.* ("WPCL"), alleges that WHITTMANHART had no good faith basis for its refusal to pay Britton's commissions, which constitute contractually-agreed-upon wages under the WPCL.  As such Britton alleges that, in addition to his commissions, he is entitled to liquidated damages in the amount of twenty-five percent of the total amount of wages due and to reasonable attorney's fees.

In the instant motion, the Defendant moves to dismiss both the WPCL claim and the Breach of Contract claim, arguing that WHITTMANHART does not owe Britton any commissions under the contract because the payments were discretionary and he was paid all that was arguably due under the Incentive Plan.

## Standard of Review

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a defendant may assert by motion that the plaintiff's complaint "[fails] to state a claim upon which relief can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine

whether, under any reasonable reading of the complaint the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 223 (3d Cir. 2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" <u>Id.</u> at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965, 167 L. Ed. 929, 940 (2007)). In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action. <u>Id.</u> at 234. In ruling on a 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint." <u>In re Rockefeller Sec. Lit.</u>, 184 F.3d 280, 287 (3d Cir. 1999).

## **Discussion**

### **A. Choice of Law: Incentive Plan**

The parties disagree as to whether Pennsylvania or Illinois law should be used in interpreting the agreements. In this case, the Incentive Plan[1] specifically provides that "this Plan shall

---

[1] Plaintiff contends that the letter attached to the Incentive Bonus Plan is a separate agreement, however the letter specifically references and refers to the Incentive Plan to detail the terms of his commissions and employment. (<u>See</u> Notice of Removal, Exh. A.) Therefore, we read the letter and attached plan together as one document.

be governed by and construed in accordance with the laws of the State of Illinois." (Notice of Removal, Exh. A.)  As such, the Defendant contends that the Court should apply Illinois law in construing the employment agreement. The Plaintiff, on the other hand, argues that the Illinois choice of law clause should not be enforced because Illinois does not bear a substantial relationship to the parties and the transaction.  Plaintiff posits that there is no reasonable basis for the parties to choose Illinois law because the employment contract was executed, signed and carried out in Pennsylvania and the only connection to Illinois is the presence of one WHITTMANHART office.  (Pl.'s Mem. Mot. Dismiss, 15).  In the alternative, Plaintiff contends the choice of law clause is invalid because Illinois lacks a substantial relationship to the events giving rise to the dispute, Pennsylvania has a materially greater interest in the outcome, and applying Illinois law would contravene Pennsylvania's public policy interest because it would "erode Britton's right as a Pennsylvania employee to seek unpaid wages. . . ." (Pl.'s Mem. Opp. Mot. to Dismiss, 16.)

   In analyzing a breach of contract claim, we must first determine whether Pennsylvania or Illinois law controls the interpretation of the employment agreement at hand.  Federal courts exercising diversity jurisdiction must apply the conflict

of law rules of the forum state in which it sits.  <u>Klaxon Co. v.</u>
<u>Stentor Electric Mfg. Co.</u>, 313 U.S. 486, 497 (1941).  Therefore,
Pennsylvania choice of law rules apply.[2]

  Pennsylvania courts generally honor the intent of the
contracting parties and enforce choice of law provisions in
agreements so long as the transaction bears a "reasonable
relationship"[3] to the state whose law is governing and parties
have "sufficient contacts" with the chosen state.  <u>Watkins v.</u>
<u>Kmart Corp.</u>, No. 96-4566, 1998 WL 355525, at *3, 1998 U.S.Dist.
LEXIS 9494, at *9 (E.D. Pa. June 29, 1998); <u>Cottman Transmission</u>
<u>Sys. Inc. v. Melody</u>, 860 F.Supp. 1180, 1184 (E.D. Pa. 1994);
<u>Smith v. Commonwealth Nat. Bank</u>, 557 A.2d 775, 777, 384 Pa.Super.
65 (1989), *appeal denied,* 569 A.2d 1369, 524 Pa. 610 (1990).
Having adopted Section 187 of the Restatement (Second) Conflict

---

[2] "Pennsylvania applies an "interest/ contacts" methodology to contract choice
of law questions. First the court determines whether there is a 'false
conflict' between the competing states laws such that only one jurisdiction's
governmental interests would be impaired by the application of the other
jurisdiction's laws." <u>Hammersmith v. TIG Insurance Co.</u>, 480 F.3d 220, 226-
227, 229 (3d Cir. 2007).  "...In that event, the court should apply the law of
the state whose interests would be harmed if its laws were not applied. Hence
[a] deeper (choice of law) analysis is necessary only if *both* jurisdictions'
interests would be impaired by the application of the other's laws (i.e.,
there is a true conflict)." <u>Id.</u>
[3] This determination is guided by: "1) the place of negotiation, contracting
and performance of the contract in question; 2) the location of the subject
matter of the contract; and 3) the parties' citizenship." <u>Cottman</u>
<u>Transmission Sys. Inc., v. Melody</u>,  869 F.Supp. 1180, 1184 (E.D. Pa. 1994).

of Laws,[4] Pennsylvania courts will not ignore a contractual choice of law provision unless that provision conflicts with strong public policy interests. <u>Kruzits v. Okuma Mach. Tool, Inc.</u>, 40 F.3d 52 (3d Cir. 1994).

The Court finds the relationship between Illinois law to the contract at hand reasonable and contacts with Illinois sufficient given that WHTTMANHART's headquarters, payroll department, primary decision making and location of corporate officers and operations are located in Illinois. (Notice of Removal, Exh. B.) In the commercial world, where a company does business in multiple states "it is understandable and reasonable that [the company] include a choice of law provision it its financial agreements to ensure that those agreements are governed by the laws of its principle place of business." <u>Kruzits</u>, 40 F.3d at 56. As such, it cannot be said that Pennsylvania has a "materially greater" interest than Illinois in the outcome of the

---

[4] Section 187(2) of the Restatement (Second) of Conflict of Laws holds parties accountable to the law of the state selected in an agreement, unless:
> "(a) the chosen state has no substantial relationship to the parties or the transactions and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue, and which, under the rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

case.  Id. at 1185.  Furthermore, application of Illinois law to
the contract at hand does not preclude Plaintiff from bringing a
WPCL claim.  See Bowers v. Foto-Wear, Inc., No. 03-1137, 2007 WL
906417, at *12 (M.D. Pa. March 22, 2007) (noting that a choice of
law provision limited to contractual dispute did not apply to
statutory claims).  Thus, we do not find that Illinois contract
law necessarily contravenes Pennsylvania's public policy interest
in providing a statutory mechanism for an employee to recover
wages.  Campanini v. Studsvik, Inc., No. 08-5910, 2009 WL
926975, at *5 (E.D. Pa. Apr. 6, 2009)(finding that a "breach of
contract claim in which an employment agreement must be construed
in accordance with Tennessee law is not necessarily mutually
exclusive with a claim brought under a Pennsylvania statutory
scheme that permits employees to collect unpaid wages").

    Thus, we will honor the choice of law provision included in
the Incentive Plan and Illinois law will govern its
interpretation. See, e.g., Campanini, No. 08-5910, 2009 WL
926975, at *4 (E.D. Pa. Apr. 6, 2009).[5]

## B. Breach of Contract

---

[5] The Commission Agreement does not contain a choice of law provision,
therefore, if it is deemed necessary, a separate choice of law analysis will
ensue to determine which states' law will govern the interpretation of this
agreement at summary judgment.

Under Illinois law,

> [A]n employee handbook or other policy
> statement creates enforceable contractual
> rights if the traditional requirements for
> contract formation are present. First, the
> language of the policy statement must contain
> a promise clear enough that an employee would
> reasonably believe that an offer has been
> made. Second, the statement must be
> disseminated to the employee in such a manner
> that the employee is aware of its contents
> and reasonably believes it to be an offer.
> Third, the employee must accept the offer by
> commencing or continuing to work after
> learning of the policy statement. When these
> conditions are present, then the employee's
> continued work constitutes consideration for
> the promises contained in the statement, and
> under traditional principles a valid contract
> is formed.

Moore v. Illinois Bell Tel. Co., 508 N.E.2d 519, 520-521

(Ill.App.Ct. 1987) (citing Duldulao v. St. Mary of Nazareth

Hospital Center, 115 Ill.2d 482, 490 (1987)).

Additionally, when looking to written contracts, the plain and

obvious meaning of the language is used to determine a contract's

meaning.  Brown v. Miller, 360 N.E.2d 585, 586, 45 Ill. App. 3d

970, 972 (Ill. App. Ct. 1977)(citing Chicago Home for Girls v.

Carr, 133 N.E. 344, 300 Ill. 478 (1921); Serafine v. Metropolitan

Sanitary District, 272 N.E.2d 716, 133 Ill. App. 2d 92 (Ill. App.

Ct. 1971)).  "Illinois uses a 'four corners' rule in the

10

interpretation of contracts, holding that 'if the language appears to admit of only one interpretation, the case is indeed over.'" <u>Great American Leasing Corp. v. Cozzi Iron & Metal, Inc.</u>, 76 F. Supp. 2d 875, 878 (N.D. Ill. 1999) (quoting <u>Bourke v. Dun & Bradstreet</u>, 159 F.3d 1032, 1036 (7th Cir. 1998)).

Thus, under the "four corners rule," the court looks initially to the language of the contract and if the contractual terms are unambiguous, the court must interpret the language as a matter of law. <u>See</u> <u>e.g.</u>, <u>Independent Construction Equipment Builders Union v. Hyster-Yale Materials Handling, Inc.</u>, 83 F.3d 930, 932 (7th Cir. 1996). Only when a term is ambiguous, in that a term in the contract "may be reasonably interpreted in more than one way," will the court look outside the language of the contract; however, "[t]he mere fact that the parties disagree on some term . . . does not render the term ambiguous." <u>Dean Mgmt. v. TBS Constr., Inc.</u>, 790 N.E.2d 934, 939, 339 Ill. App. 3d 744, 748 (Ill. App. Ct. 1990)); <u>see also</u> <u>Whiting Stoker Co. v. Chicago Stoker Corp.</u>, 171 F.2d 248, 250-51 (7th Cir. 1948).

Where an Incentive Plan is at issue, Illinois courts decline to find statements of intent as giving rise to a contractual obligation if it is clear that nothing has been promised. <u>Moore v. Illinois Bell Telephone Co.</u>, 508 N.E.2d 519 (Ill.App.Ct.

1987).  Whether the Incentive Plan is a promise depends on whether it would be reasonable for the employee to interpret the language in the contract as an offer.  Id.; see Hughes v. Encyclopedia Britannica, Inc., 117 N.E.2d 880, 881-82 (1954)(holding that a pension plan that included a provision stating that no contractual relationship was intended or created between employee and employer did not give rise to a contractual relationship).  Where language in the agreement clearly indicates that there is no promise of compensation, a claim for breach-of-contract fails as a matter of law.  Moore, 508 N.E.2d at 521.

The parties disagree as to the meaning of wages under the Incentive Plan and when wages are considered earned wages under the agreement.  WHITTMANHART argues that the Incentive Plan does not create a contractual right to payment and as such, Britton's claim for Breach of Contract and his WPCL claim fail as a matter of law.  WHITTMANHART posits that the Incentive Plan clearly did not create a contractual obligation because the Incentive Plan was "discretionary" and Mr. Britton was merely "eligible" for incentive payments since the Incentive Plan stated that "it was not a contract for a term of employment or for any benefit." (Def. Mot. Dismiss at 5.)  WHITTMANHART construes the Incentive Plan's terms as granting the employer discretion in deciding whether to make incentive payments and argues that the terms

12

cannot be construed to support a contract or assurance of
compensation between the parties.  WHITTMANHART relies on <u>Moore</u>
to support the claim that since the incentive plan allows for
such discretion in withholding payments, an employee is not
contractually entitled to payment.  The Defendant further submits
that the Plaintiff is not entitled to relief because he seeks
relief for wages that were not earned until after his
termination.  (Def.'s Mot. Dismiss at 5.)  The Plaintiff,
however, contends that wages were earned for the business he sold
or for which he or his team were the procuring cause, including
commissions based on revenue following termination.  (Compl.  ¶
18.)  Plaintiff further alleges that pursuant to the Incentive
Plan and Commission Agreement, Defendants breach of its
contractual obligation to pay wages entitle Plaintiff to
repayment under the WPCL and liquidated damages in the amount of
twenty-five percent of total amount of wages due. (Compl. ¶ 33-
35.)

    Looking only to the language in the Incentive Plan, on the
first page a clause outlining "Eligible Employees" states that
the "Plan is a statement of the Company's intentions and does not
constitute a guarantee and does not create a contractual
relationship or any contractually enforceable rights between the
Company and the Employees."  (Compl., Ex. A.)  This clause in the

Incentive Plan may constitute a clear statement disclaiming contractual obligation between the parties under Illinois contract law.  <u>Moore</u>, 508 N.E.2d at 510.

In the instant case, however, this is not the only written agreement between the parties.  The October 23, 2007, Commission Agreement outlines different employment terms between WHITTMANHART and Britton than those dictated in the Incentive Plan.  (Compl., Ex. B.)  The Commission Agreement outlines the details of Britton's sales and commission structure and requests Britton to "indicate [his] acceptance of the terms set forth in this letter by signing the enclosed copy."  (Compl., Ex. B.)  Standing alone, the Commission Agreement does not disclaim any contractual obligations between WHITTMANHART and Britton nor does it provide for a termination policy as to how and whether commissions for which Plaintiff was the procuring cause would be payable after termination.

While disagreement is not dispositive of the ambiguity of the contract at this time, the reading of the Commission Agreement and Incentive Plan could reasonably be interpreted in more than one way.  The Commission Agreement may be read together with the Incentive Plan as supplementing the rates and commission structure, such that the clause limiting any intent to create a

14

contractual right modifies the new commission structure.
However, the Commission Agreement may plausibly be read as a
standalone agreement.[6]  Given this potential ambiguity, it would
be inappropriate for this Court to dismiss the breach-of-contract
claim at this stage in the proceedings without a more developed
record.  Thus, the Defendant's Motion to Dismiss the Plaintiff's
breach-of-contract claim must be denied.

**B.  WPCL Claim**

The Defendant contends that the WPCL claim should be
dismissed because the Plaintiff did not have a contractual right
to wages; thus, no wages were earned for which to bring a claim
under the statute.  The purpose of the WPCL is to protect
employees by "providing statutory remedies for the employer's
breach of its contractual obligation to pay wages."[7]  Ward v.
Whalen, 18 Pa.D. & C.3d 710, 714 (C.P. Allegheny County 1981).
Courts look to the contract between the parties to determine
whether specific commissions were "earned." See Heimenz v.
Pennsylvania Power & Light Co., 75 Pa.D. & C.2d 405, 406 (C.P.
Lycoming County 1976) (finding that whether severance pay is

---

[6] The court recognizes that if the Commission Agreement were to stand alone,
the choice of law provision from the Incentive Plan may not apply to it.
[7] The WPCL's definition of "wages" includes all earnings of an employee,
regardless of whether determined on time, task, piece, commission or other
method of calculation. 43 Pa.Stat.Ann. § 260.2a.

wages according to the WPCL depends upon the terms of the contract between the parties). In the case of a terminated employee, the Wage Payment and Collection Law applies only to wages earned prior to termination. <u>Allende v. Winter Fruit Distributors, Inc.</u>, 709 F. Supp. 597 (E.D. Pa. 1989); <u>Sendi v. NCR Comten, Inc.</u>, 619 F. Supp. 1577 (E.D. Pa. 1985), judgment aff'd, 800 F.2d 1138 (3d Cir. 1986) (referring to 43 P.S. § 260.5). The statute does not itself create a right to compensation, <u>Kafando v. Erie Ceramic Arts Co.</u>, 2000 PA Super 377, 764 A.2d 59 (2000); rather, the contract between the parties governs whether specific wages or commissions have been earned. <u>Oberneder v. Link Computer Corp.</u>, 696 A.2d 148, 548 Pa. 201 (1997).

As the Defendant's argument is dependent on Plaintiff's contractual right to payment, a matter yet to be decided, the determination of the WPCL claim cannot be resolved at this time. Therefore, the Defendant's Motion to Dismiss the WPCL claim is denied.

An appropriate Order follows.